## William Jacobs v. W. H. Crumbaker and James W. Bechtel, composing the firm of Crumbaker & Bechtel.

1. WARRANTY—*Sale of a Harvesting Machine—Waiver.*—The provisions of a warranty in the sale of a harvesting machine, "that if upon starting the machine it should not work well, immediate written notice must be given," etc., are waived by a subsequent agreement that the purchaser should start the machine, and the sellers and an agent of the machine company would come and see that it was working properly, and if not, would remedy the defects, and by the fact that they did come, and acted upon such agreement without written notice.

2. SAME—*When its Provisions Can Not be Invoked.*—The provisions of a written warranty, on the sale of a harvesting machine, that "continued possession of the machine" shall be deemed conclusive evidence that the machine "fills the warranty," can not be invoked when such possession is continued with the consent of the vendors after the machine is found defective, and in order to allow them time to replace defective portions of the machine.

Assumpsit, for the price of a harvesting machine. Appeal from the County Court of McLean County; the Hon. C. D. MYERS, Judge, presiding. Heard in this court at the May term, 1896. Reversed and remanded. Opinion filed November 26, 1896.

### STATEMENT OF THE CASE.

The judgment appealed from was against the appellant for the price of a binder purchased by him of the appellees in June, or July, 1894.

The machine was warranted as follows:

"All our machines are warranted to be well made and of good material, and to do good work with proper manage-

ment, when set up and operated as per printed directions. If, upon starting any one of our machines, it should not work well, immediate *written* notice must be given to the Walter A. Woods Harvester Co., at Chicago, Ill., and the local agent from whom it was purchased, and reasonable time allowed to get to it and remedy the defects, if any, (the purchaser rendering necessary and friendly assistance,) when, if it can not be made to do good work, it shall be returned, free of charge, to the place where received, and the payment of money or notes will be returned. Failure to immediately give notice as above, or continued possession of the machine, whether it is kept in use or not, shall be deemed conclusive evidence that the machine fills the warranty. No one has any authority to add to, or abridge, or change this warranty in any manner."

It appeared without substantial dispute the machine failed to comply with the warranty.

The appellant became aware of this on the first day when he attempted to harvest his oats, which was the same day he received it.

He did not notify the appellees because, as it appeared without contradiction, appellees agreed on the day he received the machine they would go to his farm on the next day and have an expert machinist accompany them and see that it worked properly.

They, and such experts, came on the second day in pursuance of the agreement and found it necessary to re-adjust some of the parts of the binder, which they did, or attempted to do, and went away with instructions to appellee to go ahead with it and it would work all right. He did as they directed. It still failed to operate properly, ran too heavily, dropped the bundles, failed to bind too many bundles, and cut the pinions of one or more of the wheels.

After trying it for the remainder of that and part of the next day, with no better success, appellant notified appellee in writing. Appellee Bechtel came to appellant's farm in response to the notice, examined the machine, found the pinion was cutting and had cut away considerably, and he told appellant he would telegraph for another pinion. Ap-

pellant desired to know what he should do in the meantime with his oats; Bechtel told him to run the machine as much as it would run. Appellee telegraphed for another pinion and wheel, and appellant continued to use the machine.

The cutting away of the pinion and cog wheel continued, the machine ran heavily, so that extra teams were required, and full work could not then be done. The binder attachment seemed to be defective, at least failed to do the work properly, and many bundles were dropped unbound.

Appellant finally completed the cutting of his crop, and some time afterward appellee and the expert came with the new pinions and wheel. The machine was then under a shed on appellant's premises, and they removed the old pinion and put in the new one. Harvest was then over for that season. On September 22, 1894, appellee wrote to appellant and demanded payment of the price of the machine and appellant replied under date of September 24, 1894, he would not pay until he had an opportunity to try the machine but was willing it should be taken back.

Appellee answered as follows:

Colfax, Illinois, Oct. 11, 1894.

Friend Jacobs: I am somewhat surprised at your views about the binder; to be sure we guarantee your machine, and the company stands behind us. But you very well know one day's use of machine is considered an acceptance of same.

We have already paid the company for the machine and of course expect you to settle with us. If anything goes wrong with you next year the same will be made all O. K.

Resp. yours,

Crumbaker & Bechtel,

By W. H. Crumbaker.

Appellee brought suit November 12, 1894. The cause was pending until August, 1895, when the judgment appealed from was rendered.

Appellant retained the machine and attempted to use it in the harvest 1895, but it failed as before. Appellee Bechtel was notified and was present, admitted it would not operate properly and he could not fix it but sent for an expert as before.

He wrote appellant the following letter:

Colfax, Illinois, July 13, 1895.

Mr. Wm. Jacobs.

Dear Sir: I wrote the company this morning and telegraphed also to send man at once; will be out as soon as he comes; don't be afraid of hurting the machine; use it just the same as if nothing was wrong; it will be made right if it takes another machine.     Yours truly,

J. W. Bechtel.

The expert workman came, re-adjusted the machine and made such changes as he thought necessary but to no purpose. Appellant procured another machine with which to complete his harvest and hauled the one in question to the place from whence he got it and left it there. Appellee refused to receive it. The court ruled upon propositions of law as follows:

Refused: The court held as a matter of law that an attempt to remedy alleged defects in the machine in controversy which did not succeed during the harvest, and a further attempt to remedy such defects after the close of the harvest would in law be a waiver of the requirements to return the machine, and would authorize the defendant to retain the same until the next harvest under the original warranty.

Held: The court holds as a matter of law that an attempt on the part of plaintiffs to repair alleged defects in the machine in controversy after the close of the harvest season, and a request to the defendant to retain the machine and try it in the next harvest year, if made by the plaintiffs, would work an extension of the original warranty until opportunity to test the machine in the next harvest.

Held: The court holds that the fact that the plaintiffs went to the home of defendants on verbal notice and had experts from the factory come there to fix the machine in controversy in this case, was a waiver of any agreement there may have been to give written notice.

Held: The court holds as a matter of law that if the machine in controversy did not comply with the warranty, and

that the plaintiffs were notified of that fact and failed to make the machine comply with the warranty, and if after the harvest closed they attempted to remedy the defect, then the defendant would have a right to retain the machine until it could be tried in the next harvest and the warranty upon the same would remain until such trial.

Rowell, Neville & Lindley, attorneys for appellant.

E. G. Creamer and A. E. DeMange, attorneys for appellees.

Mr. Presiding Justice Boggs delivered the opinion of the Court.

That the machine failed to fulfill the warranty was fully proven, and indeed not seriously controverted. The provision of the warranty, "that if, upon starting the machine, it should not work well, immediate written notice must be given," etc., was waived by the agreement that appellant should start the machine, and appellees and an agent of the machine company would come and see that it was working properly, and if not, would remedy the defects, and by the fact they did come and acted upon such agreement without written notice.

The provision of the same instrument "that continued possession of the machine shall be deemed conclusive evidence that the machine fills the warranty," can not be invoked when such possession was continued with the consent of the appellees after they found it to be defective, and in order to allow them reasonable time in which to procure new pinions or wheels, deemed by them necessary to make it operate, in compliance with their contract. Appellees did not obtain these needed new parts until the harvest of 1894 was over. The test of the binder contemplated by the warranty, was successful operation in actual work in the harvest field. It could not then be applied. Appellees had conceded the machine had not worked as warranted, and their several efforts to correct the defect had not succeeded.

Was appellant required to accept the act of appellees, in supplying another pinion and other wheels, and the belief of appellees, expressed to him, " the machine would operate successfully," as equivalent to an actual demonstration in the harvest field? We think not. He had the right to suppose it was appellees' desire he should retain the machine and give it another trial.

This, in answer to a written demand for payment, he informed them he was willing to do, or was willing the machine should be returned.

They replied by letter to the effect he had accepted the machine by using it for one day, and must pay for it, and rely upon their warranty that it would work according to the contract.

And such seems, from an examination of the propositions of law, held and refused, to have been the view accepted by the court.

A warranty may be so drawn that the party aggrieved must retain the property, and recover damages for its breach, but that is not true when, as in this case, the instrument, by its terms, gives the right to return the property and be relieved of all obligation to pay the price thereof.

A letter written by appellee under date of October 11, 1894, can not be construed otherwise than as a refusal to accept a return of the machine.

It relieved appellant of any present duty of hauling the machine back to their place and tendering it to them. He retained it until harvest was again at hand; notified appellees that he would again test it at actual work.

They attended and aided him in the effort to make it do, properly, the work it had been constructed and sold and warranted to do.

The result was as before; it failed to fulfill the warranty. He returned it, as he had the right to do. We think the finding and judgment against him was erroneous.

It must be reversed and the cause remanded.